## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TRESA DURDEN, f/k/a Tresa
McCowell, and MICHAEL LANE
DURDEN,

        **Plaintiffs,**

    **v.**

STATE FARM FIRE AND
CASUALTY COMPANY,

        **Defendant.**

**1:15-cv-3971-WSD**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs Tresa Durden ("Mrs. Durden")

and Michael Lane Durden's ("Mr. Durden") (together, "Plaintiffs") Motion for

Reconsideration of this Honorable Court's Granting of Defendant's Motion for

Summary Judgment [37] ("Motion for Reconsideration"), Motion to Extend Time

for Plaintiffs to Amend Motion for Reconsideration of this Honorable Court's

Granting of Defendant's Motion for Summary Judgment [39] ("Motion for

Extension"), and Amended Motion for Reconsideration of this Honorable Court's

Granting of Defendant's Motion for Summary Judgment [42] ("Amended Motion

for Reconsideration").  Also before the Court is Michael B. Weinstein's

("Weinstein") Motion to Withdraw as Counsel for Tresa Durden f/k/a Tresa

McCowell and Michael Lane Durden [40] ("Motion to Withdraw").

## I.    BACKGROUND[1]

   A.    Insurance Policy

In July 2014, Defendant State Farm Fire and Casualty Company

("Defendant") issued a renters insurance policy ("Policy") to Plaintiffs.  ([24.4]

at 2).  The Policy provides coverage, from July 15, 2014, to July 15, 2015, for

"accidental direct physical loss" to Plaintiffs' personal property.  ([24.4] at 2, 22).

Plaintiffs are not entitled to payment under the Policy if they "cause[] or procure[]

a loss to property . . . for the purpose of obtaining insurance benefits" or if they

"intentionally conceal[] or misrepresent[] any material fact or circumstance

relating to th[e] insurance, whether before or after a loss."  (Plaintiffs' Response to

Defendant State Farm Fire and Casualty Company's Statement of Undisputed

Material Facts [31.2] ("Pl. Resp. DSMF") ¶¶ 57-58).  The Policy requires Plaintiffs

to take certain steps after suffering a covered loss:

---

[1]    The facts, stated in this Order, are taken from the Court's February 27, 2017,
Order [35] granting Defendant's Motion for Summary Judgment.

After a loss to which this insurance may apply, you shall see that the following duties are performed:

a.  give immediate notice to us or our agent.  Also notify the police if the loss is caused by theft.  Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b.  protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

c.  prepare an inventory of damaged or stolen personal property. Show in detail the quantity description, age, replacement cost and amount of loss.  Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d.  as often as we reasonably require:

(1)  exhibit the damaged property;

(2)  provide us with records and documents we request and permit us to make copies;

(3)  submit to and subscribe, while not in the presence of any other insured:

(a)  statements; and

(b)  examinations under oath;

. . . .

(Pl. Resp. DSMF ¶ 28).

The Policy limits the circumstances in which Plaintiffs may file suit against Defendant:  "No action shall be brought unless there has been

compliance with the policy provisions.  The action must be started within

one year after the date of loss or damage."  (Pl. Resp. DSMF ¶ 55).

B.    Plaintiffs' Claims under the Policy

On September 10, 2014, Plaintiffs were evicted from their home for

withholding lease payments from their landlord.  (Pl. Resp. DSMF ¶¶ 1-3, 8).[2]

Deputies from the Sheriff's Office of Butts County were present when the eviction

occurred.  (Pl. Resp. DSMF ¶ 3).  The eviction was conducted pursuant to a writ of

possession issued by the Magistrate Court of Butts County.  (Pl. Resp. DSMF ¶ 3).

On September 19, 2014, Mrs. Durden told the Sheriff's Office that

approximately $10,109 of Plaintiffs' personal property was stolen during the

eviction.  ([24.7] at 6; Pl. Resp. DSMF ¶ 17).  She said that she hired two strangers

to help move her belongings from her home, that they took two loads of Plaintiffs'

property in a truck and trailer, and that they "took the property some where [sic]

other than the storage location" to which they were instructed to deliver the

property.  ([24.7] at 6; Pl. Resp. DSMF ¶ 16).  On September 26, 2014, Plaintiffs

filed a claim under the Policy.  (Pl. Resp. DSMF ¶ 6).  On October 16, 2014,

---

[2]    Plaintiffs claim they withheld the payments because the landlord refused to
make certain repairs to their home.  (Pl. Resp. DSMF ¶ 8).

4

Mrs. Durden supplemented her police report, stating that $19,311 of Plaintiffs' personal property was stolen. (Pl. Resp. DSMF ¶ 18).

On December 5, 2014, Mrs. Durden provided Defendant with her recorded statement. (Pl. Resp. DSMF ¶ 7). She said that Plaintiffs' personal property was stolen or damaged during the eviction. (Pl. Resp. DSMF ¶ 8). She claimed $30,000 in missing property. (Pl. Resp. DSMF ¶ 8). She said the Sheriff's Office did not believe she lost as much property as she claimed. (Pl. Resp. DSMF ¶ 8). She said the Sheriff's Office interviewed the individuals involved in the eviction, and could not corroborate Plaintiffs' story. (Pl. Resp. DSMF ¶ 8).

In December 2014, Defendant asked Plaintiffs to provide the following documents in support of their claim: the police report, eviction documents, an inventory of the stolen or damaged property, and proof of Plaintiffs' ownership of the property. (Pl. Resp. DSMF ¶ 9). On January 12, 2015, Plaintiffs provided Defendant with an inventory of hundreds of items, totaling $41,223 in stolen property and $32,312.99 in damaged property. (Pl. Resp. DSMF ¶¶ 11-12). The list of stolen items included thousands of dollars of jewelry, twenty lighters valued at $30 each, and several holiday decorations. (Pl. Resp. DSMF ¶ 12). The list of damaged items included frozen food and food from Plaintiffs' pantry. (Pl. Resp. DSMF ¶ 12). The inventory also included baby items such as a

Fisher Price electric swing, a Graco travel system car seat and stroller, and a Graco bouncy seat. (Pl. Resp. DSMF ¶ 13). Plaintiffs' youngest child was seventeen years old at the time of the eviction. (Pl. Resp. DSMF ¶ 13).

On January 26, 2015, Plaintiffs provided Defendant with a copy of the Sheriff's Office Incident Report. (Pl. Resp. DSMF ¶¶ 15-18). Plaintiffs also provided Defendant with other documents, including photographs, receipts, and product manuals. (Pl. Resp. DSMF ¶ 10). In light of the information submitted by Plaintiffs, Defendant determined that Plaintiffs' reported losses were "questionable," that they included "numerous family heirlooms," that they included the "total contents of business/home including items of little or no value," and that Plaintiffs' inventory of items "differ[ed] significantly from the police department's crime report." (Pl. Resp. DSMF ¶ 19).

On January 30, 2015, Defendant received a telephone call from Lt. Darrel Powers of the Butty County Sheriff's Office. (Pl. Resp. DSMF ¶ 20). Lt. Powers told Defendant (1) that Mrs. Durden "goes by several different names," (2) that he has a video showing that Plaintiffs' property was appropriately removed from their home, (3) that Mrs. Durden has "a history of being evicted and making claims of theft," (4) that Mrs. Durden repeatedly returned to the Sheriff's Office to add items to the list of allegedly stolen property, (5) that he told Mrs. Durden she was no

longer permitted to add items to the list, and (6) that the Sheriff's Office "don't believe her and they are closing the case and are not going to deal with her any longer." (Pl. Resp. DSMF ¶ 20).

On February 2, 2015, Plaintiffs provided Defendant with an amended inventory, listing $34,553.86 in stolen property, with a replacement cost of $59,608.23. (Pl. Resp. DSMF ¶ 21). On February 17, 2015, Plaintiffs' landlord told Defendant that he had a judgment against Plaintiffs for thousands of dollars, that Mrs. Durden previously was evicted from a house in Jasper County, and that Mrs. Durden claimed, on four prior occasions, in different counties, that items were stolen from her during evictions. (Pl. Resp. DSMF ¶ 22).[3] On February 24, 2015, Lt. Darrel Powers told Defendant that "the theft was completely fabricated," that "the eviction was videotaped and done legally," that Mrs. Durden was a "liar," that she previously was evicted from Jasper County, and that she had used a variety of aliases to commit the same "scam" in other counties. (Pl. Resp. DSMF ¶ 24).

On March 2, 2015, Defendant sent Mrs. Durden a copy of the Policy provision that lists her "duties after loss," including her duty to "provide [Defendant] with records and documents [that Defendant] request," and her duty to

---

[3]      Plaintiffs state they have never been evicted. (Pl. Resp. DSMF ¶ 22).

provide any requested statements and to submit to examinations under oath. ([24.9]; (Pl. Resp. DSMF ¶ 26). Defendant asked Mrs. Durden to comply with this provision and to complete, by May 2, 2015, a Sworn Statement in Proof of Loss. (Pl. Resp. DSMF ¶ 26).

On March 27, 2015, Defendant asked Mrs. Durden to submit, on April 3, 2015, in Atlanta, to an examination under oath ("EUO"). (Pl. Resp. DSMF ¶ 27). Defendant sought to resolve several coverage issues, including whether Plaintiffs intentionally caused their losses or misrepresented any material facts regarding their claim. (Pl. Resp. DSMF ¶ 25).[4] Defendant asked Mrs. Durden to provide several documents in advance of the EUO, including the following:

- A completed Sworn Proof of Loss;

- Copies of all Leases where she had resided (2010 to present);

- Receipts, invoices, credit card records, owner's manuals, photographs, and other items substantiating the claimed amounts;

---

[4] Defendant also sought to determine whether Plaintiffs' losses constituted "accidental direct physical loss," whether Plaintiffs took all required steps after suffering their loss, whether Plaintiffs abandoned their property, and whether Plaintiffs "use[d] all reasonable means to save and preserve the property at and after the time of [their] loss." ([24.4] at 22; Pl. Resp. DSMF ¶¶ 25, 59-60). These questions were relevant to Plaintiffs' entitlement to payment under the Policy.

- Income Records – tax returns, records reflecting household income (2013 and 2014), all working financial records (2013 and 2014), and monthly bank statements (2013 and 2014);

- Debt/Expense Records – records reflecting household expenses (2013 and 2014), copies of leases, copies of any bankruptcy petitions, copies of any credit and debit card statements for all cards (2013 and 2014);

- Documents reflecting items pawned by Plaintiff Tresa Durden, her children, or spouse (2012, 2013, 2014);

- The name and address of any moving van or truck, moving service, storage facility, the name of the renter, and a copy of the contract (2012, 2013, 2014);

- A printout of social media accounts for all social media accounts (for the time period of January 1, 2014 through October 31, 2014).

(Pl. Resp. DSMF ¶ 29; [24.10] at 3-4). Defendant advised Mrs. Durden that it "insists upon strict compliance with the policy conditions" and that "[n]o further action will be taken on [her] claim until the examination has been completed and signed and until all documents requested have been produced." ([24.10] at 5). Defendant told Mrs. Durden she was not required to produce any documents that she did not have or could not obtain. ([24.10] at 4).

On March 31, 2015, Mrs. Durden asked Defendant to move her EUO to Stockbridge, Georgia. (Pl. Resp. DSMF ¶ 30; [24.11]; [24.13]). Defendant agreed to do so. (Pl. Resp. DSMF ¶ 30; [24.11]). On April 2, 2015, Mrs. Durden

cancelled the EUO and informed Defendant that she had retained counsel. ([24.12]; Pl. Resp. DSMF ¶ 31). On April 21, 2015, Defendant rescheduled the EUO for May 1, 2015. ([24.13] at 1; Pl. Resp. DSMF ¶ 32). Defendant also reiterated its earlier request that Mrs. Durden submit certain documents to Defendant in advance of the EUO. (Pl. Resp. DSMF ¶ 32).

On April 29, 2015, Mrs. Durden cancelled the EUO for a second time. (Pl. Resp. DSMF ¶ 33). On May 1, 2015, Defendant warned Mrs. Durden that further delay could jeopardize her coverage under the Policy. (Pl. Resp. DSMF ¶ 33). Defendant also reiterated that it requires "strict compliance with all policy conditions." ([24.14]). On May 7, 2015, Mrs. Durden called Defendant and complained about its requests for documentation and an EUO. (Pl. Resp. DSMF ¶ 34). Mrs. Durden said she thought Defendant's requests were too personal and that Defendant did not have a right to conduct an EUO. (Pl. Resp. DSMF ¶ 34). On May 12, 2015, Mrs. Durden informed Defendant that she or her attorney would contact Defendant to reschedule the EUO. (Pl. Resp. DSMF ¶ 35). Two days later, Defendant again advised Mrs. Durden that her claim could not be processed until she provided the requested documents and underwent an EUO. ([24.15]). Defendant stated that further delay could jeopardize her coverage under the Policy and that Defendant "insists upon strict compliance with all policy conditions."

([24.15]).  Defendant also warned Mrs. Durden that, under the Policy, she could

not bring an action against Defendant unless she complied with all Policy

provisions within one year of the date of her loss.  ([24.15]).

Almost three months later, on August 3, 2015, Mrs. Durden contacted

Defendant and rescheduled her EUO for August 14, 2015.  (Pl. Resp. DSMF ¶ 36).

On August 4, 2015, Defendant sent Mrs. Durden a letter, reiterating Defendant's

earlier request for documents in advance of the EUO, stating that "strict

compliance with the policy conditions" was required, and warning that "[n]o

further action will be taken on [Plaintiffs'] claim until the examination has been

completed and signed and until all documents requested have been produced."

([24.16]).  Defendant's letter also included a copy of the Policy provision that lists

Plaintiffs' duties after suffering a loss, including Plaintiffs' duty to provide

Defendant with requested documents and to submit to an EUO.  ([24.16]).

On August 14, 2015, Defendant took Mrs. Durden's EUO.  (Pl. Resp. DSMF

¶ 37).  Mrs. Durden brought an amended inventory to the EUO, claiming

$35,325.44 in stolen property, with a replacement cost of $60,119.81.  (Pl. Resp.

DSMF ¶ 43).  She also brought a copy of her Sworn Statement in Proof of Loss,

claiming $59,608.23 in stolen property and $32,312.99 in damaged property.

(Pl. Resp. DSMF ¶ 42).  She did not bring, or otherwise submit, other documents

requested by Defendant. ([24.19] at 1). She told Defendant it was "not legally entitled to the following documents and records nor are these records relevant to [Plaintiffs'] claim: Bank statements and records, tax returns, credit card statements, leases, Facebook, Twitter, Instagram, or LinkedIn, bankruptcy records, phone records, moving truck, moving van, moving service, and storage facility." (Pl. Resp. DSMF ¶ 39).

Mrs. Durden also refused, at her EUO, to answer questions concerning (1) her household income and finances,[5] (2) her cell phone,[6] (3) her prior leases, (4) her current landlord, (5) where she lived previously, (6) prior lawsuits in which she was involved, (7) whether she previously filed for bankruptcy, (8) whether she pawned any items in the last three years, (9) whether she was evicted previously, and (10) the U-haul she rented on the date of her loss. (Pl. Resp. DSMF ¶ 38). In view of Mrs. Durden's failure to answer these questions, and her failure provide the required documentation, Defendant could not complete the EUO. (Pl. Resp. DSMF ¶ 44).

---

[5] Mrs. Durden refused to answer whether she received monthly income from other than her husband's job. (Pl. Resp. DSMF ¶ 40; [24.13] at 13). She stated that she had a retirement account, "some savings," and that "her children received [almost $100,000] as a result of their father being a disabled Veteran who is deceased." (Pl. Resp. DSMF ¶ 40; [31.8] at 1; [24.23] at 13).

[6] Mrs. Durden used her cell phone during the eviction, but refused to provide the name of the carrier. (Pl. Resp. DSMF ¶ 41).

On August 24, 2015, Defendant told Mrs. Durden it could not "render a decision on [her] claim until all of the records and documents requested have been produced." ([24.19] at 4). Defendant provided Mrs. Durden with a copy of the Policy provision listing Plaintiffs' duties after suffering a loss, and reiterated that Defendant "demand[s] strict compliance with all provisions in the insurance contract." ([24.19] at 4).

Plaintiffs did not, before filing this action, produce the "requested credit or debit card records, bank records, tax returns, household income or expense records, debt/expense records, moving or storage records, or social media records." (Pl. Resp. DSMF ¶ 50). Mrs. Durden had access to these documents but declined to produce them because she believed they were irrelevant. (Pl. Resp. DSMF ¶ 50).

C.    Procedural History

On September 9, 2015, Plaintiffs filed their Complaint [1.1] in the Superior Court of Henry County, asserting a claim for breach of contract. Plaintiffs alleged that, in violation of the Policy, Defendant failed to "fully indemnify the Durdens for the value of their loss to their personal property due to the September 10, 2014 theft and vandalism occurrence." (Compl. ¶ 9). Plaintiffs sought damages of $65,000 or $90,000. (Compl. at 8).

On November 13, 2015, Defendant removed this action from state court. ([1]). On June 30, 2016, Defendant filed its Motion for Summary Judgment [24]. Defendant argued that Plaintiffs' claims are barred because Plaintiffs were required, but failed, to comply with the Policy's provisions before filing their Complaint. ([24.1] at 24). Specifically, Defendant claimed that Plaintiffs failed to produce documents or adequately submit to an examination under oath, in violation of the Policy. ([24.1] at 24-25). On February 27, 2017, the Court granted Defendant's Motion for Summary Judgment. (See [35] ("February 2017 Order")). The Court found that Plaintiffs failed to comply with a condition precedent to bringing this action because, in violation of the Policy, they did not provide material information requested by Defendant.

On March 27, 2017, Plaintiffs, through their attorney, filed their Motion for Reconsideration, challenging the Court's February 2017 Order. On April 10, 2017, Plaintiffs filed, *pro se*, their Motion for Extension, seeking additional time in which to amend their Motion for Reconsideration. The next day, Weinstein moved to withdraw as Plaintiffs' counsel of record. On April 14, 2017, Plaintiffs filed, *pro se*, their Amended Motion for Reconsideration. On April 21, 2017, Plaintiffs filed their objections to Weinstein's Motion to Withdraw, arguing that Weinstein

should "continue as counsel for Plaintiffs for the duration of this case."  ([43] at 10).

## II.    WEINSTEIN'S MOTION TO WITHDRAW

Weinstein seeks leave to withdraw as Plaintiffs' counsel of record.  Under Local Rule 83.1(E)(2)(b), a motion to withdraw "shall state that the attorney has given the client fourteen (14) days prior notice of the attorney's intention to request permission to withdraw and shall specify the manner of such notice.  The notice shall be served upon the client, personally or at that client's last known address." LR 83.1(E)(2)(b), NDGa.  "A copy of the notice shall be affixed to the motion." LR 83.1(E)(2)(b)(J), NDGa.

Weinstein's Motion to Withdraw fails to comply with these requirements. Weinstein does not state that he gave Plaintiffs fourteen days notice of his intention to seek permission to withdraw.  Weinstein does not state that he provided this notice personally or at Plaintiffs' last known address.  Weinstein also failed to submit with his motion a copy of the required notice.  Weinstein's Motion to Withdraw is denied for failure to comply with Local Rule 83.1(E)(2)(b).

## III.   PLAINTIFFS' PRO SE MOTIONS

Plaintiffs' Motion for Extension and Amended Motion for Reconsideration (together, "Pro se Motions") were filed *pro se*.   Local Rule 83.1(D)(2) provides

limited circumstances in which a represented party may file *pro se* motions in a

civil case:

> ***Pro se* Appearance Limitations.** Whenever a party has appeared by attorney, the party may not thereafter appear or act in the party's own behalf in the action or proceeding or take any step therein unless the party has first given notice of the party's intention to the attorney of record and to the opposing party and has obtained an order of substitution from the court.  Notwithstanding this rule, the court may in its discretion hear a party in open court even though the party has previously appeared or is represented by attorney.

LR 83.1(D)(2), NDGa.

Plaintiffs' Pro Se Motions were filed in violation of this rule because, when

the motions were filed, Plaintiffs were represented by Weinstein.  Plaintiffs have

not shown that they notified Weinstein and Defendant of their intention to proceed

*pro se*.  Plaintiffs also did not obtain an "order of substitution from the court," and

in fact opposed Weinstein's Motion to Withdraw.  LR 83.1(D)(2), NDGa.

Plaintiffs' Pro Se Motions are denied for failure to comply with Local Rule

83.1(D)(2).  <u>See</u> <u>Way v. Sims</u>, No. 1:08-cv-3849, 2009 WL 10670654, at *5 (N.D.

Ga. Dec. 14, 2009) (denying a *pro se* motion for reconsideration for failure to

comply with Local Rule 83.1(D)(2)).[7]

---

[7] Plaintiffs' Amended Motion for Reconsideration also exceeds the page limit prescribed by Local Rule 7.1(D).

Weinstein filed Plaintiffs' Motion for Reconsideration on March 27, 2017.

Because Plaintiffs' *pro se* motion is not properly before the Court, the operative

motion for reconsideration is that filed by Weinstein on March 27, 2017, and it is

the March 27, 2017, motion that the Court considers in this Order.

## IV.  PLAINTIFFS' MOTION FOR RECONSIDERATION

A.  <u>Legal Standard</u>

Motions for reconsideration "should be reserved for extraordinary

circumstances" and are not to "be filed as a matter of routine practice."  LR 7.2(E),

NDGa; <u>Adler v. Wallace Computer Servs., Inc.</u>, 202 F.R.D. 666, 675 (N.D. Ga.

2001).  If a motion for reconsideration is "absolutely necessary," it must be "filed

with the clerk of court within twenty-eight (28) days after entry of the order or

judgment."  LR 7.2(E), NDGa.

Plaintiff here seeks reconsideration under Rule 59(e) of the Federal Rules of

Civil Procedure.  <u>See</u> <u>Mays v. U.S. Postal Serv.</u>, 122 F.3d 43, 46 (11th Cir. 1997)

(finding that a motion for reconsideration was properly characterized as falling

under Rule 59(e), rather than Rule 60, because "the relief sought was the setting

aside of the grant of summary judgment, denial of the defendant's motion for

summary judgment, and trial on the merits of the case").[8] "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007); see Hood v. Perdue, 300 F. App'x 699, 700 (11th Cir. 2008); Jersawitz v. People, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999). "Evidence that could have been discovered and presented on the previously-filed motion is not newly discovered." Cox v. Rubin Lublin, LLC, No. 1:16-cv-448, 2017 WL 117142, at *2 n.2 (N.D. Ga. Jan. 11, 2017); see Arthur, 500 F.3d at 1343-44; Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997) ("[P]arties cannot introduce new evidence post-judgment unless they show that the evidence was previously unavailable."). An error is "manifest" if it is "clear and obvious." United States v. Battle, 272 F. Supp. 2d 1354, 1358 (N.D. Ga. 2003); see Benton v. Burke, No. 11-cv-493, 2012 WL 1746122, at *1 (N.D. Ala. May 16, 2012) ("A manifest error of law is the wholesale disregard, misapplication, or failure to recognize controlling precedent."). A court's conclusions are not manifestly erroneous if they are "at least arguabl[y]" correct. Battle, 272 F. Supp. 2d at 1358.

---

[8] The Court would reach the same conclusions expressed in this Order even if Plaintiffs' Motion for Reconsideration was filed pursuant to Rule 60 of the Federal Rules of Civil Procedure.

"[T]he moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." <u>Burger King Corp. v. Ashland Equities, Inc.</u>, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). "When evaluating a motion to reconsider, a court should proceed cautiously, realizing that in the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly." <u>United States v. Bailey</u>, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003), <u>aff'd,</u> 419 F.3d 1208 (11th Cir. 2005); <u>cf.</u> <u>Griffin v. Swim-Tech Corp.</u>, 722 F.2d 677, 680 (11th Cir. 1984) ("The desirability for order and predictability in the judicial process speaks for caution in the reopening of judgments."). "[T]he decision to grant a motion for reconsideration is committed to the sound discretion of the district judge." <u>Townsend v. Gray</u>, 505 F. App'x 916, 917 (11th Cir. 2013).

B.    <u>Analysis</u>

Plaintiffs move for reconsideration on the following grounds: (1) "Defendant had no credible reason to believe Plaintiffs were in any way fraudulent in the submission of their claim," (2) Plaintiffs "substantially compl[ied] with Defendant's requests," and (3) Mrs. Durden, on October 4, 2016, was diagnosed with medical conditions that rendered her "unable to fully understand

the requirement that she needed to produce all documents requested by Defendant." ([37] at 12-14). The grounds for reconsideration, while facially inconsistent, are addressed separately by the Court.

### 1. Reasons to Suspect Fraud

Plaintiffs seek reconsideration on the grounds that "Defendant had no credible reason to believe Plaintiffs were in any way fraudulent in the submission of their claim." ([37] at 13-14). As the Court found in its February 2017 Order, however, the record is replete with indications of fraudulent conduct. Between Mrs. Durden's eviction and her examination under oath, Plaintiffs' alleged losses increased from approximately $10,000 to $60,000 in stolen property.[9] Plaintiffs' initial claim of $10,000 doubled within a month of her first police report. (See Pl. Resp. DSMF ¶¶ 17-18). The Sheriff's Office repeatedly informed Defendant that they did not believe Mrs. Durden's story, that she repeatedly added items to her list of allegedly stolen property, that she was a "liar," that they closed her case after failing to corroborate her version of events, that she had "a history of being evicted and making claims of theft," that she used a variety of aliases to commit the same "scam" in other counties, and that they had a video showing

---

[9]  Plaintiffs' final inventory claimed approximately $35,000 in stolen property, with a replacement cost of approximately $60,000. Plaintiffs' Sworn Statement in Proof of Loss claims $59,608.23 in stolen property.

Plaintiffs' property was appropriately moved during the eviction. (Pl. Resp. DSMF ¶¶ 8, 20, 24). Plaintiffs' landlord also told Defendant he had a judgment against Plaintiffs for thousands of dollars, and that Mrs. Durden claimed, on four prior occasions, in different counties, that items were stolen from her home during evictions. (Pl. Resp. DSMF ¶ 22). This information, regardless of its ultimate truthfulness, "authorized [Defendant] to suspect fraudulent behavior" from Plaintiffs. Allstate Ins. Co. v. Hamler, 545 S.E.2d 12, 14 (Ga. Ct. App. 2001). The Court, in its February 2017 Order, correctly found that "there is evidence of possible fraud in this case." (February 2017 Order at 23). Plaintiffs have not shown this conclusion constitutes "manifest error" or warrants relief under Rule 59(e). Arthur, 500 F.3d at 1343.

      2.    Plaintiffs' Substantial Compliance with Defendant's Requests

Plaintiffs claim that summary judgment should not have been granted because they "substantially compl[ied] with Defendant's requests." ([37] at 12). As the Court found in its February 2017 Order, however, Plaintiffs failed to provide Defendant with documents required to be produced under Georgia law.

The insurance policy in Halcome, like the Policy here, required plaintiffs to submit to examinations under oath and to produce documents requested by the insurance company. Halcome v. Cincinnati Ins. Co., 334

S.E.2d 155 (Ga. 1985). The Halcome plaintiffs filed claims under the policy after their car allegedly was stolen from a motel parking lot. They claimed a property loss of approximately $130,000, the bulk of which was for jewelry contained in the stolen car. The insurance company became suspicious of the claim after discovering that (1) plaintiffs previously filed an insurance claim for a burglary loss of about $136,000, the majority of which was for jewelry, (2) plaintiffs recently increased the coverage on their jewelry, (3) plaintiffs recently filed, but did not prevail in, a lawsuit against other companies, (4) plaintiffs were sued, three years earlier, for delinquent rental payments, and (5) plaintiffs were unemployed at the time of the alleged theft.

The plaintiffs submitted to an examination under oath, where they answered several questions and produced several documents. Plaintiffs refused, however, to provide certain financial records requested by the insurance company, including documents showing plaintiffs' income and sources of income for several years preceding their claim. Plaintiffs argued "the information sought [was] not relevant to the claim under investigation, and [was] of a private nature so that its disclosure should not be required." 334 S.E.2d at 157. The Georgia Supreme Court found that plaintiffs'

"recent income and sources of income" were material—that is, "relevant"— because "there [was] evidence of possible fraud." Id. The court held that plaintiffs were barred from recovery because they breached their insurance contract by failing to produce the required information. Id.

The insurance policy in Hamler also required plaintiff to produce documents requested by the insurance company. The policy precluded plaintiff from bringing suit unless she complied with "all policy terms." 545 S.E.2d at 13. Plaintiff filed a claim under the policy after several items allegedly were stolen from her home. Plaintiff submitted to an examination under oath and produced several documents requested by the insurance company, including bank statements, receipts, her driver's license, photographs of the stolen items, and copies of the police reports. Plaintiff refused, however, to produce her tax returns, documents reflecting her income, telephone or other utility bills, credit card or other loan statements, and records showing her hospital admissions and discharges.

The Georgia Court of Appeals held that plaintiff "breached the contract of insurance by failing to provide these documents, even though [plaintiff] did provide certain other information." Id. at 14. The court found that the insurance company "was authorized to suspect fraudulent behavior"

because plaintiff's statements during her examination under oath "differed in certain respects from her earlier statements." Id. The court concluded that "the information sought by [the insurance company] was relevant to its suspicion of fraud and to a possible financial motive." Id. Plaintiff was barred from bringing an action against the insurance company because she failed to produce the requested documents.

It is undisputed that Plaintiffs here did not, before filing this action, produce several documents requested by Defendant, including "credit or debit card records, bank records, tax returns, household income or expense records, debt/expense records, moving or storage records, or social media records." (Pl. Resp. DSMF ¶ 50). These documents are similar—and, in some instances, identical—to those in Hamler and, as in that case, they are relevant to Defendant's "suspicion of fraud and to a possible financial motive." Hamler, 545 S.E.2d at 14; see JC & C Inc. v. Peerless Indem. Ins. Co., No. 1:11-cv-3591, 2013 WL 1346021, at *3 (N.D. Ga. Apr. 3, 2013), aff'd, 548 F. App'x 604 (11th Cir. 2013) ("In a case where there is possible fraud, such as this one, information about the insured's income and financial situation is material and relevant to possible fraud and to the insured's possible financial motive."); Roberts v. State Farm Fire & Cas. Co., No. 7:11-cv-86, 2011 WL 6215700, at *6 (M.D. Ga. Dec. 14, 2011), aff'd, 479 F. App'x 223

(11th Cir. 2012) ("In a case like this where there is possible fraud, information about the insured's income and sources of income is material and relevant to possible fraud and to the insured's possible financial motive."). The Court found, in its February 2017 Order, that the documents were required to be produced, and that Plaintiffs were barred from filing this action because they failed to comply with Defendant's requests. Plaintiffs have not shown that this conclusion constitutes a manifest error or warrants relief under Rule 59(e). See Hamler, 545 S.E.2d at 14 ("Hamler refused to comply with Allstate's request for this relevant information and breached her insurance contract. Summary judgment in Allstate's favor consequently was warranted.").

### 3. Mrs. Durden's Medical Conditions

Plaintiffs also move for reconsideration on the grounds that Mrs. Durden, on October 4, 2016, was diagnosed with medical conditions that rendered her "unable to fully understand the requirement that she needed to produce all documents requested by Defendant." ([37] at 12). Plaintiffs claim "Mrs. Durden was suffering from serious medical issues that resulted in her having cognitive dysfunction and diminished capacity." ([37] at 12). Plaintiffs rely on a one-page check-list, dated October 4, 2016, in which Mrs. Durden's physician diagnosed her with chronic pain, cognitive dysfunction, chronic fatigue, menopause syndrome,

malaise, fatigue, IBS, chronic sinusitis, insomnia, sleep disorder, and arthralgia.

([37.1]).[10]  This list was not submitted to the Court before summary judgment was

entered on February 27, 2017.  (See [36]).

Plaintiffs have not shown that Mrs. Durden's medical conditions warrant

reconsideration of the Court's February 2017 Order, including because the list of

medical conditions was not timely submitted to the Court and there is no record

evidence that Plaintiffs, including Mr. Durden, were unable to provide the

information requested by Defendant.  There simply is no admissible or other

evidence to support that Mrs. Durden suffered from her diagnosed conditions

during the period in which she repeatedly refused to provide Defendant with the

requested information.  Even if there was, there is no evidence that Mrs. Durden's

conditions rendered her unable to understand or comply with Defendant's requests,

or that Mr. Durden was unable to provide the information requested or unable to

help Mrs. Durden to do so.  The undisputed evidence is that Mrs. Durden refused

to provide Defendant with the requested documents not because she was disabled

but because she believed the documents were "irrelevant" and that Defendant was

---

[10]     Although Plaintiffs submitted additional medical evidence with their *pro se*
Amended Motion for Reconsideration, this evidence is not properly before the
Court because it was submitted *pro se* while Plaintiffs were represented by
counsel.  See LR 83.1(D)(2), NDGa.

"not legally entitled" to them.  (Pl. Resp. DSMF ¶¶ 39, 50).  At her EUO, for

example, during which she claims she was in good health, ([26.11] at 122, 124),

Mrs. Durden told Defendant it was "not legally entitled to the following documents

and records nor are these records relevant to [Plaintiffs'] claim:  Bank statements

and records, tax returns, credit card statements, leases, Facebook, Twitter,

Instagram, or LinkedIn, bankruptcy records, phone records, moving truck, moving

van, moving service, and storage facility."  (Pl. Resp. DSMF ¶ 39).  As explained

earlier in this Order, Georgia courts have held, in similar cases, that at least some

of this information is relevant and required to be produced to insurance companies

during their investigation of a claim.  See Halcome, 334 S.E.2d at 157 (finding that

the insured's financial records, including those showing recent income and sources

of income, were relevant and required to be produced to an insurance company);

Hamler, 545 S.E.2d at 13-14 (finding that the insured was required to provide the

following documents to her insurance company:  "federal and state tax returns,"

"documentation reflecting income for [certain] years," "telephone or other utility

bills," "monthly credit card or other loan statements," and "records showing

hospital admissions and discharges").  Mrs. Durden's unwarranted belief that the

requested documents are irrelevant does not excuse her failure to produce them.

Mrs. Durden's medical issues also do not constitute "newly-discovered evidence," under Rule 59(e), because she received her diagnoses almost five months before the Court granted Defendant's Motion for Summary Judgment. See Arthur, 500 F.3d at 1343 ("The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact."). Plaintiffs' failure to previously introduce Mrs. Durden's medical evidence bars relief under Rule 59(e). See Michael Linet, Inc. v. Vill. of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005) ("[A party] cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."); Mays, 122 F.3d at 46 ("[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.").

The only evidence that Mrs. Durden suffered from medical issues before October 4, 2016, is her own testimony that she suffered from "menopausal symptoms" that delayed her EUO. ([26.11] at 120-124; [32.1] ¶¶ 35, 39).[11] Mrs. Durden testified that she did not see a doctor about these symptoms and that,

---

[11] Mrs. Durden testified that her menopausal symptoms included sweating, inability to sleep, temperature fluctuation, lost hair, agitation, exhaustion, loss of appetite, body aches, and concentration difficulties. ([26.11] at 120-124).

before her EUO, she "started taking some herbal medications . . . which worked,"

"calmed down" her symptoms, and made her "feel like a different person."

([26.11] at 122, 124; see also [32.1] ¶ 39).  This evidence previously was presented

to the Court and is insufficient to excuse Plaintiffs' failure to comply with

Defendant's document requests.  Cf. Blackburn v. State Farm Fire & Cas. Co., 329

S.E.2d 284, 286 (Ga. Ct. App. 1985) ("The failure to comply with a condition

precedent to coverage on an insurance policy may be excusable if the insured is

dead, missing or physically or mentally disabled.").  Even assuming Mrs. Durden

was disabled, there is no evidence that Mr. Durden could not comply with

Defendant's requests.  Plaintiffs have not established "extraordinary

circumstances" warranting relief under Rule 59(e), and their Motion for

Reconsideration is denied.  Adler, 202 F.R.D. at 675.[12]

---

[12]    To the extent Plaintiffs claim that "Mrs. Durden [initially] was told she had two (2) years in which to commence legal action," ([37] at 13), this argument previously was presented to the Court, does not preclude summary judgment, and does not warrant relief under Rule 59(e).  (See, e.g., [31] at 9, 20); see Owens v. Metro. Life Ins. Co., No. 2:14-cv-74, 2017 WL 106017, at *2 (N.D. Ga. Jan. 11, 2017) ("A motion for reconsideration may not be used to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind."); Adler, 202 F.R.D. at 675 ("[A] motion for reconsideration should not be used to reiterate arguments that have been made previously."); see also Hood, 300 F. App'x at 700 ("[A] motion for reconsideration is not an opportunity for the moving party to instruct the court on how the court 'could have done it better' the first time.").

## V.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Reconsideration of this Honorable Court's Granting of Defendant's Motion for Summary Judgment [37] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Extend Time for Plaintiffs to Amend Motion for Reconsideration of this Honorable Court's Granting of Defendant's Motion for Summary Judgment [39] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Motion for Reconsideration of this Honorable Court's Granting of Defendant's Motion for Summary Judgment [42] is **DENIED**.

**IT IS FURTHER ORDERED** that Michael B. Weinstein's Motion to Withdraw as Counsel for Tresa Durden f/k/a Tresa McCowell and Michael Lane Durden [40] is **DENIED**.

**SO ORDERED** this 29th day of August, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE